STATE OF NEBRASKA, APPELLEE, V. RICHARD BULLOCK,
APPELLANT.

388 N.W.2d 505

Filed June 13, 1986.   No. 85-548.

Dennis R. Keefe, Lancaster County Public Defender, and Harry A. Moore, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Defendant, Richard Bullock, was convicted in the then Lincoln Municipal Court of violating Lincoln Mun. Code § 10.52.020 (1982) of driving while intoxicated. Defendant appealed to the district court, which affirmed the conviction. Defendant appeals to this court.

Defendant assigns two errors: that the trial court erred (1) in allowing a police officer to testify regarding the proper maintenance and functioning of the breath test machine when that officer was not the person who maintains the machine; (2) in receiving in evidence the results of a breath test when the State failed to produce competent evidence that the machine was properly maintained and functioning. These assignments may be addressed together in that they raise the broad issue of what constitutes sufficient foundation to prove the proper maintenance of a breath test machine for the later admission of breath test results into evidence.

On February 22, 1985, defendant was operating a motor

vehicle in Lincoln, Nebraska. Officer Domangue had stopped the vehicle approximately 4 hours earlier that evening because it had no license plates displayed. Upon recognizing the vehicle, and noting that it still did not have license plates, Domangue followed it for several blocks and activated his red lights to stop it. The vehicle changed from the center lane to the left lane of a three-lane road, slowed, and turned left two blocks later. After the turn the vehicle pulled to the curb, and its front right wheel struck the curb. The officer determined that the car was not properly registered and that defendant did not have a valid operator's license.

The defendant got out of the vehicle upon Domangue's request and stumbled when he did so, but regained his balance and walked, without any impairment, to the police car. Domangue detected an odor of alcohol on defendant's breath and saw that his eyes were red or bloodshot and that, when first stopped, he had slurred and somewhat confused speech.

After these observations Domangue requested that defendant submit to a preliminary breath test. After he failed that test he was arrested for driving while intoxicated. Defendant was taken to the Lincoln police station, where he was tested on an Intoxilyzer breath machine. After the breath test was administered, defendant was issued a ticket for driving while intoxicated.

At trial Domangue testified that before he administered the test he had reviewed the machine's maintenance records but that he had not performed the maintenance. The person who performed the maintenance did not testify. Domangue administered the test according to the checklist technique as provided in the rules and regulations of the Department of Health, Neb. Admin. Code tit. 177, ch. 1, § 007.04A3 (1984). Over objection, Domangue testified that the machine had been properly maintained and that the machine was properly functioning. Domangue also testified, over a foundation objection, as to the test results, which indicated that defendant had more than ten-hundredths of 1 percent by weight of alcohol in his body fluids.

In *State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980), we set out four foundational elements which the State must

establish to put the results of a breath test into evidence: (1) That the testing device was properly working at the time of testing; (2) That the person administering the test was qualified and held a valid permit; (3) That the test was properly conducted under the methods stated by the Department of Health; and (4) That all other statutes were satisfied. We affirm these principles and further explain the first principle, with which defendant takes issue in this appeal.

Defendant does not contend that the regulations themselves are inadequate or improper. Title 177 of the Nebraska Administrative Code, adopted by the Nebraska Department of Health, was introduced in evidence. Chapter 1 of title 177 is entitled: "RULES AND REGULATIONS RELATING TO ANALYSES FOR THE DETERMINATION OF THE ALCOHOL CONTENT OF BODY FLUIDS AND OF THE BREATH UNDER THE DRIVING WHILE INTOXICATED LAW." These regulations provide, at § 007.04A3, that an appropriate method for testing the breath with the Intoxilyzer model 4011AS is found in "Attachment 3." A checklist form identical with "Attachment 3" was used by Officer Domangue and was admitted into evidence as exhibit 6.

Attachment 3 is a "Checklist Technique To Be Used by Class B Permit Holders for Chemical Tests As Set Forth Below." The checklist consists of 14 steps and a preliminary step. The preliminary step states: "Prior to Step 1, verify that maintenance, repair, and calibration have been performed for the Intoxilyzer 4011AS as prescribed in subsection 007.06 of 177 NAC 1 for this testing device by reviewing the maintenance record." Exhibit 6 indicates that Officer Domangue performed the preliminary test of verification of the maintenance of the Intoxilyzer. He checked the box provided to show completion and noted, "2-1-85 Pam Zilly." Officer Domangue testified that Pam Zilly is the person who maintains the machine. We find that the requirements of title 177, themselves, to the extent they are involved herein, are satisfactory and reasonable.

Defendant contends that because Domangue had no personal knowledge of the maintenance on the machine and based his testimony on a document, his testimony was hearsay. We agree that the officer's testimony was based on hearsay

evidence. Neb. Rev. Stat. § 27-803 (Reissue 1985) provides in part: "Rule 803. Hearsay exceptions; enumerated; availability of declarant immaterial. Subject to the provisions of section 27-403, the following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . ." Whether the records of the maintenance of the Intoxilyzer were admissible under general conditions need not be determined herein. Such records could be admitted without the testimony of the person who actually maintained the machine in the manner set out in the regulations of the Department of Health if an appropriate exception to the hearsay rule existed. Among those exceptions are those set out in § 27-803(5) and (22), or other applicable exception.

Any exception to the hearsay rule, however, is based on the "trustworthiness" of the hearsay evidence. In this case defendant contends that the maintenance records relied upon are not sufficient to constitute proper foundation for Officer Domangue's testimony that the Intoxilyzer was properly maintained, because the records do not inform the police officer that both of two separate types of maintenance were performed as required by title 177. Title 177 requires two inspections of the testing device used herein. First, § 007.06B provides: "Testing devices used for direct breath testing shall have been checked within 190 days prior to an analysis by a person responsible for maintenance and calibration." Second, § 007.06F1 provides: "Check the general condition of the instrument within 40 days prior to an analysis. This includes inspection of digital display lights and instrument operation lights. Record observations and corrections made." The testimony of Officer Domangue in this regard, on cross-examination, showed the following:

Q. [Defense counsel] . . . Are you aware that there are two types of maintenance that must be performed on a 4011AS machine —

A. No.

. . . .

Q. From the two regulations you just read, do you now understand that there is a 40-day maintenance schedule for one type of maintenance for the machine and a

190-day maintenance schedule for another type of maintenance for the machine?

A. Yes.

Q. Which test was performed — or which maintenance was performed on the February 1st date that you've just testified to earlier that Pam Zilly had written on the form?

A. I could only speculate. I don't know for sure.

Q. Okay, only being able to speculate, how can you verify then that maintenance was done on that machine as required by the regulations?

A. Because the date was put down and Pam Zilly signed it.

Q. But you really don't know what that February 1st date means?

THE WITNESS: As far as which of the two testing regulations you just read?

[Defense counsel]: Yes, among other things.

A. No.

The testimony and exhibits in this case do not establish which of the inspection procedures were carried out on February 1, 1985, and do not establish that both procedures were complied with on that day. The maintenance record available for Officer Domangue's examination apparently did not disclose the record required to be made of any observations made with regard to "the general condition of the instrument . . . [the] digital display lights and instrument operation lights." In that condition of the record in this case, there is no way to determine that the evidence as to the proper maintenance of the Intoxilyzer is trustworthy. There is not sufficient foundation for Officer Domangue's testimony that the machine was properly maintained. Without that foundation, there is no foundation for Officer Domangue's testimony as to the results of the Intoxilyzer test. His testimony in that regard should not have been admitted in evidence. Therefore, there is no evidence that defendant was in operation of a motor vehicle when he had ten-hundredths of 1 percent or more by weight of alcohol in his body fluids. We hold that under title 177, with regard to the taking of breath samples, where the records of maintenance of an Intoxilyzer machine are relied on to prove that the machine

was properly maintained, the records must show that inspections comply with all requirements of such title by satisfactory evidence.

One issue remains. The State in its brief notes that the complaint against defendant charges not only that defendant was driving with an alcohol content of ten-hundredths of 1 percent or more by weight but also that defendant was operating his car while under the influence of alcohol. In *State v. Hilker*, 210 Neb. 810, 812, 317 N.W.2d 82, 84 (1982), we held that such an offense could be proved

> by any one of three ways: (1) By proof that the defendant was in physical control of a motor vehicle while under the influence of alcoholic liquor; . . . (3) By proof that the defendant was in physical control of a motor vehicle while having ten-hundredths of one percent or more by weight of alcohol in his or her body fluid.

See, also, *State v. Wenzel*, 215 Neb. 395, 338 N.W.2d 772 (1983); *State v. Tomes*, 218 Neb. 148, 352 N.W.2d 608 (1984).

In this case, as in *State v. Wenzel, supra*, the trial court made a general finding of guilt. The State contends that even if the Intoxilyzer test results are inadmissible, there was sufficient evidence for the court to have found defendant guilty of driving a vehicle while under the influence of alcohol. We do not agree. The evidence shows that shortly after the police car's red lights were turned on, defendant pulled from the center of three lanes to the left lane and turned to the left and stopped his car. Defendant did stumble as he got out of his car, but then walked 20 or 30 feet to the police car with "nothing unusual" in his walk. Defendant did have the odor of alcohol on his breath, and his eyes were "red and bloodshot." Officer Domangue testified that at one time in his conversation with defendant in the police car, defendant's speech was "slurred and somewhat confused," but also testified that in conversation while defendant was still in his own car, he did not "recall observing anything at that time about his speech."

No field tests were given to defendant. While not required under the rule in *State v. Hilker, supra*, the officer was not asked his opinion as to defendant's condition. The evidence presented to support a finding that defendant was intoxicated

does not approach the degree of evidence in *State v. Tomes, supra*, or in *State v. Green*, 217 Neb. 70, 348 N.W.2d 429 (1984). The evidence before the trial court was not sufficient to support a finding of guilty on this issue. See *State v. Johnson*, 215 Neb. 391, 338 N.W.2d 769 (1983).

Defendant's conviction is reversed and the cause remanded with directions to dismiss the complaint.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.

WHITE, J., participating on briefs.

KRIVOSHA, C.J., dissenting in part.

I must respectfully dissent from that portion of the majority opinion which holds that the evidence was insufficient to find the defendant guilty of driving a vehicle while under the influence of alcohol. Both the municipal court of Lincoln and the district court for Lancaster County found the defendant guilty. That was sufficient. See *State v. Parker*, 221 Neb. 570, 379 N.W.2d 259 (1986). We have consistently held that we will sustain a criminal conviction on grounds of sufficiency of the evidence if the evidence sustains some rational theory of guilt. See *State v. Evans*, 215 Neb. 433, 338 N.W.2d 788 (1983). Furthermore, we have said that a verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. See, *State v. Blattner*, 222 Neb. 396, 383 N.W.2d 803 (1986); *State v. Green*, 217 Neb. 70, 348 N.W.2d 429 (1984). In the instant case we are told that when Bullock first got out of the car, he stumbled. He further had the odor of alcohol on his breath, and his eyes were red and bloodshot. The evidence further establishes that at one time in his conversation with the police officer, the defendant's speech was slurred and somewhat confused. We have frequently held such evidence to be sufficient to sustain a conviction. I would have affirmed on the basis that, considering the evidence most favorable to the State, there was sufficient evidence to support the conviction entered by the municipal court of the city of Lincoln. I do not believe we mean to review drunk driving cases de novo.