STATE OF NEBRASKA, APPELLEE, V.
LAMONT A. ROBINSON, APPELLANT.
639 N.W.2d 432

Filed January 29, 2002.   No. A-01-671.

Thomas C. Riley, Douglas County Public Defender, and Cheryl M. Kessell for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Lamont A. Robinson appeals from his conviction and sentence for fourth-offense driving under the influence (DUI). On appeal, Robinson asserts that the trial court erred in receiving the results of an Intoxilyzer test without sufficient foundation, that the trial court erred in convicting him without sufficient evidence, and that the trial court erred in imposing an excessive sentence. We find no merit to any of these assigned errors, and accordingly, we affirm.

## II. BACKGROUND

On February 17, 2000, an information was filed charging Robinson with DUI. On February 24, Robinson pled not guilty. On October 6, Robinson waived his right to be tried by a jury, and the case proceeded to a bench trial commencing on November 29.

Officer Scott Gray of the Omaha Police Department testified that he was on patrol with his partner, Officer Charles DiDonato, on February 15, 2000. Gray testified that the officers observed a vehicle stopped in an alley where there were signs posted indicating there was to be "no stopping, standing or

parking, either side, any time." Gray testified that the lights of the stopped vehicle were "[o]ff." The officers ultimately approached the vehicle and observed that "it had a taillight lens on the left side that was broken" and "displayed white light to the rear." Based on the broken taillight and the vehicle's being parked in a no-parking area, the officers made contact with the driver of the vehicle.

Gray testified that the driver initially identified himself as Sim Robinson, but that the officers eventually discovered his correct name to be Lamont Robinson. Gray testified that upon contact with Robinson, Gray "[n]oticed some signs of intoxication, including red glassy eyes and slurred speech and strong odor of alcoholic beverage." DiDonato testified that he also observed signs of intoxication, including "bloodshot glassy eyes."

DiDonato testified that he asked Robinson to submit to field sobriety tests. DiDonato related to the court his background and training to administer such tests, including that he had administered field sobriety tests "[s]everal dozen times" before. DiDonato testified that prior to having Robinson submit to any field sobriety tests, he asked Robinson if he was on any medication or had any physical impairments which would affect Robinson's performance on the tests. DiDonato then administered the "horizontal gaze nystagmus" test, and he testified that Robinson showed signs of impairment based on the test. According to DiDonato, he attempted to have Robinson perform other field sobriety tests, including "an ABC test" and a "count backwards" test, but Robinson "stated he was unable to perform" those tests.

DiDonato testified that Robinson voluntarily submitted to a breath test at police headquarters. The test was administered by Richard Ingraham, an Omaha Police Department crime laboratory technician who has been trained and has a permit to use the Intoxilyzer for administering breath tests. The State presented evidence to establish that the various maintenance and operation requirements outlined in title 177 of the Nebraska Administrative Code were complied with. One such requirement is a "190 day check" wherein the Intoxilyzer must be "checked with a simulator check sample within 190 days prior to an analysis." 177 Neb. Admin. Code, ch. 1, § 007.06B (1998). The State

attempted to adduce evidence from the person at the Omaha Police Department responsible for the maintenance of the Intoxilyzer, Karenina Smith, concerning compliance with the 190-day check requirement.

At trial, the evidence indicated that exhibit 10, the document from the Department of Health and Human Services (DHHS) which indicates the results of the 190-day check performed on February 5, 2000, indicated that the serial number for the Intoxilyzer being checked was "0660004370," while other evidence indicated that the serial number for the Intoxilyzer at the Omaha Police Department used to test Robinson was "66-004370." Because the serial number on exhibit 10 did not match the serial number on the Intoxilyzer at the Omaha Police Department, the court initially sustained a foundational objection to the admission of exhibit 10. The court granted the State a continuance, apparently to allow the State to obtain the correct documentation.

When the trial commenced again, the State presented exhibit 14, a certified document from DHHS concerning the February 5, 2000, 190-day check on the Intoxilyzer at the Omaha Police Department. Exhibit 14 is a certified document from the State "Administrator of 177 NAC 1" and indicates that the "serial number of [the testing] device and [the] percent deviation" had been corrected from exhibit 10. The testimony concerning exhibit 14 indicated that in addition to having the corrected serial number, the exhibit also indicated that the sample tested on February 5, 2000, deviated from the target value by 5.03 percent, while exhibit 10 had indicated a deviation of 1 percent, although both exhibits indicate the exact same target value and actual result (indicating that the difference between the two concerning the amount of deviation was the result of a mathematical error on exhibit 10). Both deviations are within the allowable margin for the 190-day check to indicate the Intoxilyzer was accurate and could be used to test for alcohol content.

The court received exhibit 14, but reserved ruling on whether the State had established compliance with the Nebraska Administrative Code concerning maintenance of the Intoxilyzer. It appears that Robinson was asserting at trial that the State had

failed to show compliance with the code, because the State had not demonstrated that the results of the 190-day check were in the physical possession of the Omaha Police Department on the date Robinson was tested.

During the course of the trial, DiDonato testified that in his opinion, exclusive of the breath test results, Robinson was impaired. Additionally, the court received the test card printed out by the Intoxilyzer when Robinson was tested, which indicated that Robinson's breath alcohol content was .131 grams of alcohol per 210 liters of breath. Smith gave her opinion that the Intoxilyzer was operating properly on the date of Robinson's test, and Ingraham, who actually administered the breath test, testified that the Intoxilyzer was working properly on the date of Robinson's test.

At the conclusion of the evidence, the court took requested letter briefs from the attorneys concerning whether the 190-day-check records had to be in the physical possession of the Omaha Police Department on the date of the test to comply with the Nebraska Administrative Code and whether DUI could be proven through the opinion testimony of an officer exclusive of the Intoxilyzer test results. On March 13, 2001, the court entered a verdict of guilt. The court ruled that the necessary foundational requirements for the admission of the Intoxilyzer test were satisfied, ruling on Robinson's trial objection to exhibit 14 on which ruling had been reserved during the trial. The court then found Robinson guilty. Robinson's conviction was then enhanced to a fourth-offense DUI through the admission of prior convictions. On June 11, the court sentenced Robinson to 1 year in jail, revoked Robinson's driver's license for 15 years, and fined Robinson $1,000. Robinson then filed this timely appeal.

### III. ASSIGNMENTS OF ERROR
On appeal, Robinson has assigned three errors. First, Robinson asserts that the trial court erred in receiving the results of the Intoxilyzer without proper foundation. Second, Robinson asserts that the trial court erred in finding sufficient evidence to support a conviction. Third, Robinson asserts that the trial court erred in imposing an excessive sentence.

## IV. ANALYSIS

### 1. Foundation for Test Results

Robinson first asserts that the court erred in receiving the results of the Intoxilyzer test because there was not sufficient foundation for their receipt at trial. Specifically, Robinson asserts that the court erred in finding that exhibit 14, the results of the 190-day check, were properly maintained by the Omaha Police Department. Robinson argues that the 190-day-check results were not properly maintained, that the Omaha Police Department therefore failed to comply with the administrative requirements of the Nebraska Administrative Code, and that there was therefore inadequate foundation for admission of the test results. We find that the State presented reasonable proof that the Intoxilyzer was accurate and functioning properly and that, accordingly, there was adequate foundation for admission of the test results.

 In *State v. Bullock*, 223 Neb. 182, 388 N.W.2d 505 (1986), the Nebraska Supreme Court noted that there are four foundational requirements which the State must establish to put the results of a breath test into evidence: (1) The testing device was properly working at the time of testing, (2) the person administering the test was qualified and held a valid permit, (3) the test was properly conducted under the methods stated by DHHS, and (4) all other statutes were satisfied. In the present case, Robinson asserts that the State failed to adequately prove compliance with the regulations established by DHHS for ensuring that the testing device was properly working, a requirement of Neb. Rev. Stat. § 60-6,201 (Reissue 1998). We conclude, however, that the State did adequately prove compliance with the regulations.

The Nebraska Administrative Code provides that " 'testing devices used for direct breath testing shall have been checked within 190 days prior to an analysis by a person responsible for maintenance and calibration.' " *State v. Lowrey*, 239 Neb. 343, 348, 476 N.W.2d 540, 543 (1991). See § 007.06B. Additionally, the code requires that the holder of a permit to administer breath tests shall "[m]aintain or have access to . . . [t]he results of the Department of Health and Human Services Regulation and Licensure report of the periodic 190 day device check sample."

§ 007.05E. Because the evidence at trial indicated that on the date Robinson was tested, the Omaha Police Department did not have exhibit 14 in its physical possession, Robinson asserts that this regulation was not complied with and that the foundational requirements for admission of the breath test were not satisfied. We disagree.

The Nebraska Supreme Court has repeatedly held that reasonable proof that an Intoxilyzer machine was accurate and functioning properly is all that is required as foundation evidence. *State v. Lowrey, supra; State v. Kudlacek,* 229 Neb. 297, 426 N.W.2d 289 (1988). See, also, *State v. Snyder,* 184 Neb. 465, 168 N.W.2d 530 (1969). Exhibit 14, although prepared in December 2000, is a certified document from DHHS indicating that a 190-day check was performed on the Intoxilyzer used to test Robinson on February 5, 2000, that the check indicated that the sample tested within the allowable margins of deviation, and that the 190-day check was in compliance with the Nebraska Administrative Code requirements. The code requires that the permit holder "[m]aintain or have access to" the state-certified results of the 190-day check, not that such results be within the physical possession of the permit holder at all times. See § 007.05. The State adduced reasonable proof that this section was complied with and reasonable proof that the Intoxilyzer was operating properly on the date in question. As noted above, such reasonable proof is all that is required to meet the foundational requirements of *State v. Bullock, supra.* This assigned error is without merit.

## 2. SUFFICIENCY OF EVIDENCE

Robinson next asserts that there was insufficient evidence to support his conviction for DUI. Robinson's argument concerning the sufficiency of the evidence concerns entirely the opinion testimony of the involved police officer, apparently premised on the notion that we would agree with Robinson that the test results were improperly received. However, in light of our analysis above, the trial court properly had before it the results of the Intoxilyzer test indicating a breath alcohol content level of .131 grams of alcohol per 210 liters of breath.

Neb. Rev. Stat. § 60-6,196 (Reissue 1998) provides, in relevant part:

(1) It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle:

(a) While under the influence of alcoholic liquor or of any drug;

. . . .

(c) When such person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his or her breath.

Alcohol-related violations of this statutory prohibition may be proved either by establishing that one was in actual physical control of a motor vehicle while under the influence or by establishing that one was in actual physical control of a motor vehicle while having more than the prohibited amount of alcohol in his or her body. See *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987). As such, because we have already concluded that the State had before it test results indicating that Robinson's blood alcohol content was .131, the court had sufficient evidence to find him guilty of DUI. This assigned error is without merit.

### 3. EXCESSIVE SENTENCE

Finally, Robinson asserts that the trial court imposed an excessive sentence. Although Robinson acknowledges that the sentence imposed was within the statutory limits for his offense, fourth-offense DUI, he nonetheless asserts that the trial court abused its discretion by not imposing probation. Robinson argues that "[t]here is no question that in the present case, no one was harmed or injured, no erratic or dangerous driving by [Robinson] was evident, and there is no person who stands victimized." Brief for appellant at 16. Robinson also asserts that "[i]t is clear that [he] was, if over the limit at all, only by a small amount and that he contemplated no harm by his actions." *Id.*

Sentences within statutory limits will be disturbed only if the sentence complained of is an abuse of discretion. *State v. Spurgin*, 261 Neb. 427, 623 N.W.2d 644 (2001). There is no assertion that the sentence imposed is not within the statutory limits. The trial court noted that this is Robinson's fourth DUI conviction, that he had been fined between the date of the present offense and the sentencing hearing for having an open container of liquor, that he denied having any drinking problem or

needing any treatment, and that the probation officer recommended against probation. The court further noted that because of Robinson's history, the court was worried that somebody would "get killed" if he continued to drink and drive. On the record before us, we find no abuse of discretion. This assigned error is without merit.

### V. CONCLUSION

The trial court did not err in receiving the Intoxilyzer results. There was sufficient evidence to support the conviction, and the sentence imposed was not excessive. The judgment is affirmed.

AFFIRMED.