IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. KENYIBA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
PAUL B. KENYIBA, APPELLANT.

Filed January 14, 2014.    No. A-13-457.

Appeal from the District Court for Lancaster County: STEPHANIE F. STACY, Judge. Affirmed in part, and in part reversed and remanded with directions.

Dennis R. Keefe, Lancaster County Public Defender, and Elizabeth Elliott for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

INBODY, Chief Judge, and PIRTLE and RIEDMANN, Judges.

PIRTLE, Judge.

INTRODUCTION

Paul B. Kenyiba appeals his convictions and sentences by the district court for Lancaster County for driving under the influence (DUI), third offense, and willful reckless driving entered on April 30, 2013. For the reasons that follow, we affirm.

BACKGROUND

On July 12, 2012, the State filed an information charging Kenyiba with three counts: (1) DUI, with refusal of chemical test (two prior convictions); (2) willful reckless driving, first offense; and (3) leaving the scene of an accident, first offense. Kenyiba was arraigned on July 25 and entered pleas of not guilty. An enhancement hearing was held on April 22, 2013, and a bench trial was held on April 24.

Bryan Delgado testified that on April 6, 2012, between 4 and 5 p.m., he was driving near a grocery store at 27th Street and Cornhusker Highway in Lincoln, Nebraska. He testified he saw a silver car pull out of the grocery store's parking lot, hit another vehicle, and drive off. He

- 1 -

testified that he pulled over to check on the driver of the vehicle that was hit and that he then pursued the silver car and called the 911 emergency dispatch service. He caught up to the car and saw that it was weaving in and out of traffic and appeared to be chasing another vehicle. He said he saw the silver car ram the vehicle it was chasing and attempt to sideswipe it. Delgado continued to follow the silver car and kept in contact with the police as he followed the silver car to an apartment complex near First and Adams Streets. He parked across the street from the apartment complex and waited for the police to arrive. Delgado was shown a picture of the silver car, which was offered as exhibit 1, and he confirmed it was the silver car in question.

Jean Lado Andrea testified that she was driving in front of the silver car on Cornhusker Highway and that she lives in the apartment complex where the silver car stopped. Andrea testified that she left the same grocery store and that she looked in her rearview mirror and saw a silver car behind her driving erratically, "swerving and hitting cars." Andrea testified that she recognized the driver of the silver car as Kenyiba, who used to be a family friend. Andrea testified Kenyiba was the only person in the silver car, that he hit two or three cars on Cornhusker Highway, and that he then followed Andrea back to her apartment complex. Andrea testified that when she got home, she told her father about what happened, and that the police arrived approximately 30 minutes later. Andrea testified that the silver car in exhibit 1 was the silver car in question and that she had no doubt it was Kenyiba who was driving.

A 9-year-old boy testified that he was outside playing basketball in the apartment complex when a gray car drove through the complex and hit another car. The boy stated that Kenyiba was driving the gray car and that he was the only person in the car. The boy spoke with the police about the incident when they arrived, and he testified that the car in exhibit 1 was the car he saw Kenyiba driving that day. The boy stated he was sure he saw Kenyiba hit a green car and that he had not heard about the accident from anyone else.

The responding officer in this case was Carla Cue of the Lincoln Police Department. Cue testified that when she arrived at the apartment complex, she found the silver car in question but no one was in it. She was informed the suspect had been standing in front of apartment No. 4, so she went there to speak with the residents. She was directed to the commons area of the apartment complex, where she found Kenyiba, who smelled strongly of alcohol and had bloodshot, watery eyes. Cue asked Kenyiba if the silver Chrysler Sebring in question was his, and Kenyiba said yes. Cue asked Kenyiba to accompany her to her police cruiser, and she noted he was unsteady as he walked. Cue testified that in her opinion, Kenyiba was under the influence of alcohol and could not have safely operated a vehicle in his condition. Cue also testified that she did not see any alcohol near him when she spoke to him in the commons area.

Cue conducted a records check on Kenyiba when she returned to her cruiser and discovered that Kenyiba had an active warrant. At that time, she placed him under arrest and searched the silver Sebring. She did not find any alcohol in the car. Cue also took pictures of the car, which show that it sustained damage to the rear passenger side quarter panel, the rear passenger side door, the front passenger side quarter panel and bumper, and also the front bumper. Cue testified that the damage to the car appeared fresh. Cue testified that there was damage on the green vehicle consistent with the damage on Kenyiba's car.

After finishing her investigation at the apartment complex, Cue transported Kenyiba to jail and an Officer Dlouhy attempted to do a chemical breath test. Dlouhy read the postarrest

chemical test advisement to Kenyiba, and Kenyiba acknowledged that he understood. Dlouhy followed the procedures set forth in title 177 of the Nebraska Administrative Code. Dlouhy instructed Kenyiba on how to blow into the machine for his breath test, but Kenyiba said he was not the driver of the vehicle and was not going to blow into the machine. Dlouhy held the mouthpiece up to Kenyiba's mouth and told him that he would receive a citation for refusing the chemical test if he did not blow into the machine, and Kenyiba continued to decline testing.

Dlouhy testified that he spent a significant period of time with Kenyiba and that he noticed Kenyiba smelled strongly of alcoholic beverage, he had bloodshot eyes, and his demeanor was "very up and down." Dlouhy testified that in his opinion, Kenyiba was under the influence of alcohol and was in no condition to safely operate a motor vehicle.

The district court found Kenyiba guilty of willful reckless driving and DUI with refusal, but that court found Kenyiba not guilty of leaving the scene of an accident.

An enhancement hearing was held in the district court, during which the State introduced certified copies of court documents reflecting Kenyiba's two prior Kentucky DUI convictions. Exhibit 11 is a "Daily Disposition Report" from Jefferson District Court in Kentucky, reflecting two separate cases, 07-T-007094 and 07-T-022817, in which Kenyiba appeared with counsel, entered guilty pleas, and was sentenced for "Op MV Under/Influence of Alcohol/Drugs, etc. .08 1st off." Exhibits 12 and 13 contain court-certified copies of the "guilty plea" form and uniform citation for each case, which indicate that Kenyiba was arrested for DUI on January 24 and March 9, 2007, and pled guilty to both offenses on March 14.

Kenyiba did not object to the admission of these exhibits into evidence, but he asserted they should not be used for enhancement of his sentence in this case. Kenyiba argued that the exhibits failed to clearly show the offenses to which he pled and whether there were two separate convictions.

The district court found that both of the prior convictions were valid for enhancement purposes and enhanced Kenyiba's current DUI to a third offense, a Class IIIA felony. The district court sentenced Kenyiba to 4 to 5 years' imprisonment for the DUI and a consecutive period of 90 to 90 days' imprisonment for reckless driving. The district court also revoked Kenyiba's driver's license for 15 years. Kenyiba timely appeals.

ASSIGNMENTS OF ERROR

Kenyiba asserts the evidence adduced at trial was insufficient and that the trial court erred in permitting the use of his prior Kentucky convictions for enhancement purposes under Neb. Rev. Stat. § 60-6,197.02(1)(a)(i)(C) (Cum. Supp. 2012). Kenyiba also asserts the sentences imposed were excessive and constituted an abuse of discretion.

STANDARD OF REVIEW

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013). The relevant question for an appellate court is whether, after viewing the evidence in

the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

A sentencing court's determination concerning the constitutional validity of a prior plea-based conviction, used for enhancement of a penalty for a subsequent conviction, will be upheld on appeal unless the sentencing court's determination is clearly erroneous. *State v. Mitchell*, 285 Neb. 88, 825 N.W.2d 429 (2013).

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Kinser*, 283 Neb. 560, 811 N.W.2d 227 (2012).

ANALYSIS

*Sufficiency of Evidence.*

Kenyiba asserts the evidence was insufficient to find him guilty of either willful reckless driving or DUI.

Kenyiba was convicted of count I, DUI, with refusal of chemical test, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010). Section 60-6,196 provides:

> (1) It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle:
> (a) While under the influence of alcoholic liquor or any drug;
> (b) When such person has a concentration of eight-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her blood[.]

Kenyiba asserts the district court erred in its verdict because the State did not prove beyond a reasonable doubt that Kenyiba operated a motor vehicle on April 6, 2012, and that if Kenyiba operated a motor vehicle, whether he was intoxicated at that time. As a result, Kenyiba asserts the State is unable to prove an essential element of the crime.

A violation of § 60-6,196 is one offense which can be proved in more than one way. *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000). It may be proved by establishing either that one was in actual physical control of a motor vehicle while under the influence of alcohol or that one was in actual physical control of a motor vehicle while having more than the prohibited amount of alcohol in his or her body. *State v. Robinson*, 10 Neb. App. 848, 639 N.W.2d 432 (2002).

In this case, Kenyiba refused to submit to a chemical test, so the threshold for proof depends on whether Kenyiba had actual physical control of the vehicle while under the influence of alcohol. Reviewing the totality of the evidence in the light most favorable to the prosecution, we find a rational trier of fact could have found the essential elements of the crime were present beyond a reasonable doubt.

Circumstantial evidence may be used to establish physical control of a motor vehicle within the meaning of the statute prohibiting operating or being in actual physical control of a motor vehicle while under the influence of alcohol. *State v. Miller*, 226 Neb. 576, 412 N.W.2d 849 (1987). Flight is circumstantial evidence that may be used by the trier of fact to establish guilt beyond a reasonable doubt. *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998).

The evidence shows Kenyiba was the individual in physical control of the motor vehicle. Kenyiba owned the car, and eyewitnesses testified that Kenyiba was driving it on April 6, 2012. Delgado testified that he saw a silver car leave the grocery store parking lot and strike a car. After striking the car, the silver car drove away from the scene of the accident. Delgado testified

that he followed the silver car to an apartment complex at First and Adams Streets. Delgado identified a silver Sebring in exhibit 1 as the car he followed, and Kenyiba testified that the same silver Sebring belonged to him. Kenyiba did not present any evidence that anyone other than him had been driving the Sebring.

Andrea testified that as she looked in her rearview mirror, she witnessed the silver car driving erratically, swerving, and hitting cars. She testified that she was acquainted with Kenyiba and that she had "no doubt" he was the driver of the silver car. She testified that the silver car followed her into the apartment complex at First and Adams Streets.

The 9-year-old boy testified that he was outside playing basketball in the apartment complex when a gray car drove through the complex and hit another car. The boy stated that Kenyiba was driving the gray car and that he was the only person in the car. The boy testified that the car in exhibit 1 was the car he saw Kenyiba driving that day. He stated he was sure he saw Kenyiba hit the green car in the parking lot. Cue testified that when she arrived and inspected the Sebring, there were several areas of what appeared to be fresh damage.

Having concluded that a reasonable trier of fact could have found the above evidence was sufficient for a finding that Kenyiba was the individual in physical control of the silver car, we consider whether the evidence is such that a rational trier of fact could have found beyond a reasonable doubt that Kenyiba was under the influence of alcohol while in control of the motor vehicle.

The phrase "under the influence of alcoholic liquor or of any drug" means the ingestion of alcohol or drugs in an amount sufficient to impair to any appreciable degree the driver's ability to operate a motor vehicle in a prudent and cautious manner. *State v. Falcon*, 260 Neb. 119, 615 N.W.2d 436 (2000).

As stated above, the witnesses testified that Kenyiba was operating the car in a manner which suggests he was under the influence. The witnesses testified that the car was in at least one accident and that Kenyiba then fled the scene. The witnesses also testified that Kenyiba was driving erratically and swerving on a highway.

After sufficient foundation is laid, a law enforcement officer may testify that in his or her opinion a defendant was driving under the influence. *State v. Howard*, 253 Neb. 523, 571 N.W.2d 308 (1997). A police officer's testimony, based on personal observations of the defendant, is sufficient to sustain a finding that the defendant operated a motor vehicle while under the influence of alcohol. *State v. Batts*, 233 Neb. 776, 448 N.W.2d 136 (1989).

Evidence to sustain a DUI conviction includes erratic driving, red and watery eyes, slurred speech, and a staggered walk, as well as the odor of alcohol emanating from his or her person and his or her failure of field sobriety tests. *State v. Rodgers*, 2 Neb. App. 360, 509 N.W.2d 668 (1993).

Cue testified that only a short period of time elapsed between the time of the call to police and her response to the apartment complex. Cue searched the commons area, where she found Kenyiba, and she searched the Sebring and found there was no alcohol present in either location. There is no evidence that Kenyiba lived in the apartment complex and could have gained access to alcohol in his home. Similarly, there is no evidence that Kenyiba consumed or had possession of any alcohol during the time that elapsed between the operation of the vehicle and when he was apprehended.

Officer Cue testified that when she approached Kenyiba in the commons area, he smelled strongly of alcohol and had bloodshot, watery eyes. Cue testified that she asked Kenyiba to accompany her to her police cruiser and that she noted he was unsteady as he walked. Cue inspected the vehicle and found what appeared to be recent damage. Cue also testified that Kenyiba identified the silver Sebring as his car and did not deny that he was driving the car. Cue testified that in her opinion, Kenyiba was under the influence of alcohol and could not have safely operated a vehicle in his condition.

Dlouhy also testified that he spent a significant period of time with Kenyiba and that he noticed Kenyiba smelled strongly of alcohol, he had bloodshot eyes, and his demeanor was "very up and down." Dlouhy testified that in his opinion, Kenyiba was under the influence of alcohol and was in no condition to safely operate a motor vehicle.

In addition, a defendant's refusal to submit to a chemical test or tests of the defendant's blood, breath, or urine is admissible evidence for a violation of § 60-6,196 as long as the defendant was advised that refusal to submit to the test is a separate offense. See Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2012). The evidence shows that Kenyiba was advised of this through his postarrest chemical test advisement and that this was confirmed by Dlouhy's testimony. Cue testified that Kenyiba stated, "[Y]ou did not catch me driving, I won't take the tests."

We find the evidence presented at trial was sufficient to find that Kenyiba operated or was in physical control of the silver Sebring and that he was under the influence of alcoholic liquor while doing so. We affirm the findings of the district court with regard to the DUI conviction.

Kenyiba was also convicted of count II, willful reckless driving, in violation of Neb. Rev. Stat. § 60-6,214 (Reissue 2010), which provides that "[a]ny person who drives any motor vehicle in such a manner as to indicate a willful disregard for the safety of persons and property shall be guilty of willful reckless driving."

Kenyiba asserts the evidence is insufficient to find him guilty of willful reckless driving, as he asserts the State failed to prove he operated the silver Sebring. Kenyiba asserts the witnesses' testimony is contradictory, inconsistent, and unreliable. However, this is a matter of weight and credibility of the evidence, which is not reweighed on appeal. *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013).

We found, above, that the evidence presented at trial was sufficient to find that Kenyiba was driving the silver Sebring on April 6, 2012. The witnesses at trial testified that Kenyiba was the person operating the car and that he was driving erratically, swerving, and hitting cars. The evidence shows that he struck two or more vehicles with his car in the time between leaving the grocery store parking lot and parking at the apartment complex. The evidence also establishes that Kenyiba chose to operate a motor vehicle while he was under the influence of alcohol, which presents a danger to the persons and property in his path. The State provided sufficient evidence to prove that Kenyiba was driving his motor vehicle in such a manner as to indicate a willful disregard for the safety of person and property, and we affirm the conviction for willful reckless driving.

*Enhancement.*

Kenyiba asserts the district court erred in permitting the use of exhibits 11, 12, and 13 for enhancement purposes. He asserts these exhibits do not conclusively show what charges Kenyiba pled to and was sentenced to. We find that Kenyiba's prior convictions are supported by relevant and competent evidence and that the district court properly enhanced his DUI conviction to a third offense.

In a proceeding to enhance a punishment because of prior convictions, the State has the burden of proving such prior convictions by a preponderance of the evidence. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011).

The phrase "prior conviction" means "[a]ny conviction under a law of another state if, at the time of the conviction under the law of such other state, the offense for which the person was convicted would have been a violation of [§] 60-6,196 . . . ." § 60-6,197.02(1)(a)(i)(C). The State does not have the initial burden of showing a substantial similarity of every element of the respective DUI laws or that the facts surrounding the prior conviction would have resulted in a violation of Nebraska DUI laws as they existed at that time. *State v. Garcia*, 281 Neb. 1, 792 N.W.2d 882 (2011).

Section 60-6,197.02(2) requires the State to present a court-certified copy or an authenticated copy of a prior conviction in another state, and the statute states the copies shall be prima facie evidence of such prior conviction. See *State v. Garcia, supra.* Under the statute, the convicted person is given the opportunity to review the record of his or her prior convictions, bring mitigating facts to the attention of the court prior to sentencing, and make objections on the record regarding the validity of such prior convictions. § 60-6,197.02(3).

The Nebraska Supreme Court recently analyzed these statutes in *Garcia* and held:

> The prosecution presented prima facie evidence of [the defendant's] prior convictions by presenting a certified copy of his California DUI convictions, which . . . the State demonstrated were counseled. The burden thus shifted to [the defendant] to produce evidence rebutting the statutory presumption that those documents did not reflect that an "offense for which the person was convicted would have been a violation of section 60-6,196."

281 Neb. at 13, 792 N.W.2d at 892, quoting § 60-6,197.02(1)(a)(i)(C).

Here, the State presented court-certified documents from Jefferson District Court in Kentucky, reflecting two separate DUI convictions--January 24, 2007, in case No. 07-T-007094, and March 9, 2007, in case No. 07-T-022817. The "Daily Disposition Report" shows that on March 14, 2007, Kenyiba appeared with counsel, entered guilty pleas, and was sentenced in both cases for the offense of "Op MV Under/Influence of Alcohol/Drugs, etc. .08 1st off." This report lists a specific citation number for each case, corresponding with uniform citations contained in exhibits 12 and 13; 07-T-007074 corresponds with citation No. 7G5161562 and 07-T-022817 corresponds with citation No. 7K1803542.

The uniform citations show that Kenyiba was arrested for "DUI" on January 24, 2007, and again on March 9, 2007. The State also presented the signed "guilty plea" forms, in which Kenyiba admitted guilt in each case for the offense of "DUI 1st No Agg." All of these documents

were court-certified and established prima facie evidence of the convictions. See, § 60-6,197.02(2); *State v. Garcia, supra.*

We agree that the exhibits offered by the State establish by a preponderance of the evidence that Kenyiba was convicted of two DUI's in Kentucky for offenses that occurred on January 24 and March 9, 2007, and that Kenyiba was represented by counsel during all critical stages of those proceedings.

Kenyiba did not produce any evidence rebutting the statutory presumption that those convictions would have been a violation of Nebraska DUI laws as they existed at the time. See *State v. Garcia,* supra.

Therefore, we agree that both convictions were valid for purposes of enhancement and that the district court did not err when it enhanced Kenyiba's current DUI to a third offense.

*Excessive Sentences.*

Kenyiba asserts the sentences imposed by the district court are excessive. He asserts the court ignored the relevant factors and society's best interests when sentencing Kenyiba to 4 to 5 years' imprisonment for DUI, third offense, and 90 to 90 days' imprisonment for willful reckless driving.

Under Neb. Rev. Stat. § 29-2308 (Reissue 2008), an appellate court is obligated to review those sentences claimed to be excessive and reduce those determined to be excessive. A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Kinser*, 283 Neb. 560, 811 N.W.2d 227 (2012). A judicial abuse of discretion exists only when the reasons or rulings of the trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. White*, 276 Neb. 573, 755 N.W.2d 604 (2008).

Kenyiba was convicted of DUI, with refusal of chemical test (two prior convictions), which is a Class IIIA felony punishable by a maximum of 5 years' imprisonment, a $10,000 fine, or both. See Neb. Rev. Stat. §§ 28-105 (Reissue 2008). Neb. Rev. Stat. § 60-6,197.03(4) (Cum. Supp. 2012) also provides if a person has two prior convictions, such person shall be guilty of a Class W misdemeanor, and the court shall, as part of the judgment of conviction, order that the operator's license of such person be revoked for a period of 15 years from the date ordered by the court.

Kenyiba was also convicted of willful reckless driving, a Class III misdemeanor, which is punishable by a maximum of 3 months' imprisonment, a $500 fine, or both. See, Neb. Rev. Stat. § 60-6,215 (Reissue 2010); Neb. Rev. Stat. § 60-6,216 (Reissue 2010); Neb. Rev. Stat. § 28-106 (Cum. Supp. 2012). It also carries a mandatory license revocation of 30 days to 1 year. § 60-6,216.

Kenyiba was sentenced to a period of 4 to 5 years' imprisonment for DUI, with the requisite 15-year license revocation. He was also sentenced to a consecutive period of 90 to 90 days' imprisonment for willful reckless driving.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Dinslage*, 280 Neb. 659, 789 N.W.2d 29 (2010).

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime. *Id.* But the appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

The presentence report reflects that Kenyiba came to the United States from Sudan in 2003. In that period of time, he has accumulated at least 14 criminal convictions in three different states, not counting the numerous criminal charges on his record for which the disposition is unknown. His prior convictions include resisting/obstructing an officer, harassment, disorderly conduct, two DUI's, theft by deception, attempted assault by a confined person, assault by mutual consent, trespassing, leaving the scene of an accident, destruction of property, disturbing the peace, failure to appear, and refusing to submit to a chemical test. Additionally, at the sentencing hearing, Kenyiba was sentenced for a separate DUI, with a blood-alcohol content of .15 or higher, which occurred on March 31, 2012. Kenyiba's charges in this case occurred only a week later, on April 6.

The court reviewed the presentence report and considered "the nature and circumstances of the crime and the history, character, and condition of the defendant" in imposing Kenyiba's sentences. The court noted Kenyiba's long history of alcohol-related convictions and his refusal to get treatment. The court found that imprisonment was necessary for the protection of the public, because the risk was substantial that during any period of probation, Kenyiba would engage in additional criminal conduct and promote disrespect for the law.

Though Kenyiba's sentences are toward the upper end of the sentencing range for his convictions, such sentences were warranted due to the gravity of the offenses and his extensive criminal record. We cannot say that the district court abused its discretion by imposing sentences within the statutory range.

Finally, as stated earlier, a conviction for willful reckless driving carries a mandatory license revocation of 30 days to 1 year. See, § 60-6,216; § 28-106. Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, an appellate court may, at its option, note plain error. *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012).

In reviewing the sentences in this case, we note the district court did not order revocation of Kenyiba's license for any period of time on count II, willful reckless driving. Section 60-6,216 states that

> the court shall, as part of the judgment of conviction, order such person not to drive any motor vehicle for any purpose for a period of not less than thirty days nor more than one year from the date ordered by the court and shall order that the operator's license of such person be revoked for a like period.

Therefore, we find the trial court plainly erred.

Section 60-6,216 states the revocation shall be administered upon sentencing, upon final judgment of any appeal or review, or upon the date that any probation is revoked. The Nebraska Supreme Court has stated that the same language, in reference to revocation provided for in Neb.

Rev. Stat. § 60-6,197.06 (Reissue 2010) means the period of revocation need not necessarily begin the same date as the sentencing order and may instead commence upon whatever date the court, in its sound discretion, directs. *State v. Policky*, 285 Neb. 612, 828 N.W.2d 163 (2013). Thus, we remand to the district court the limited issue of the period of license revocation for willful reckless driving and the date upon which the revocation will commence.

## CONCLUSION

We find there was sufficient evidence to support Kenyiba's convictions for willful reckless driving and DUI. The district court did not err in using Kenyiba's prior Kentucky DUI convictions to enhance his conviction in this case. Kenyiba's sentence was within statutory limits and was not an abuse of discretion. Accordingly, the foregoing portions of the district court's findings are affirmed.

We find plain error only with regard to the district court's omission of the mandatory license revocation for willful reckless driving. We remand this issue to the district court for the limited purpose of determining the appropriate period of license revocation and when it shall commence.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.